# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY D. JUSTICE, II, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : COMPLAINT FOR VIOLATION OF THE |
| VEONEER, INC., JAN CARLSON, | : SECURITIES EXCHANGE ACT OF 1934 |
| ROBERT W. ALSPAUGH, MARY LOUISE | : |
| CUMMINGS, MARK DURCAN, JAMES M. | : |
| RINGLER, KAZUHIKO SAKAMOTO, | : |
| JONAS SYNNERGREN, and WOLFGANG | : |
| ZIEBART, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On October 4, 2021, Veoneer, Inc. ("Veoneer" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with QUALCOMM Inc. ("Qualcomm"), SSW Holdco LP ("SSW"), and SSW Merger Sub Corp. ("Acquisition Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Veoneer's stockholders will receive $37.00 in cash per share.

3. On November 15, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange

Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Veoneer common stock.

9. Defendant Veoneer is a Delaware corporation. Veoneer's common stock is traded on the New York Stock Exchange under the ticker symbol "VNE."

10. Defendant Jan Carlson is Chairman of the Board of Directors of Veoneer (the "Board").

11. Defendant Robert W. Alspaugh is a member of the Board.

12. Defendant Mary Louise Cummings is a member of the Board.

13. Defendant Mark Durcan is a member of the Board.

14. Defendant James M. Ringler is a member of the Board.

15. Defendant Kazuhiko Sakamoto is a member of the Board.

16. Defendant Jonas Synnergren is a member of the Board.

17. Defendant Wolgang Ziebart is a member of the Board.

18. Defendants identified in ¶¶ 10-17 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

19. Veoneer is a worldwide leader in automotive technology.

20. On October 4, 2021, Veoneer entered into the Merger Agreement.

21. The press release announcing the Proposed Merger provides as follows:

Qualcomm Incorporated (NASDAQ: QCOM) and SSW Partners, a New York-based investment partnership ("SSW Partners"), today announced they have reached a definitive agreement to acquire Veoneer, Inc. (NYSE: VNE; SSE: VNE SDB) for $37.00 per share in an all-cash transaction, representing a total equity value for Veoneer of $4.5 billion. Veoneer has terminated its prior acquisition agreement with Magna International Inc. ("Magna") and canceled its October 19, 2021 special meeting that was previously scheduled to approve that agreement.

At closing, SSW Partners will acquire all of the outstanding capital stock of Veoneer, shortly after which it will sell the Arriver business to Qualcomm and retain Veoneer's Tier-1 supplier businesses. SSW Partners will lead the process of finding strong, long-term strategic partners. This transaction structure facilitates the long-term success of all Veoneer's businesses.

Having already demonstrated a successful partnership with Arriver, Qualcomm believes that the Arriver business will thrive at Qualcomm. Upon close of the transactions, Qualcomm will incorporate Arriver's Computer Vision, Drive Policy and Driver Assistance assets into its leading Snapdragon Ride™ Advanced Driver Assistance Systems (ADAS) solution. This will augment Qualcomm's ability to deliver an open and competitive ADAS platform for automakers and Tier-1s at scale.

SSW Partners will work with Veoneer's management to ensure the pursuit of Veoneer's existing business plan and to identify strong, long-term strategic partners for the Restraint Control Systems (RCS) and Active Safety businesses. The principals of SSW Partners have substantial investing, operating and transaction experience internationally, as well as a track record of success in collaborating with management teams in multiple geographies and industries. They are experienced investors and advisors in both Europe and the automotive sector and will prioritize the smooth continuation of business activities for the customers and employees of

the RCS and Active Safety businesses. SSW Partners' investment in Veoneer will represent its first capital commitment as a partnership since its founding at the beginning of the year.

"Qualcomm is the natural owner of Arriver. By integrating these assets, Qualcomm accelerates its ability to deliver a leading and horizontal ADAS solution as part of its digital chassis platform," said Cristiano Amon, president and CEO of Qualcomm Incorporated. "We believe that this transaction and structure benefits both Qualcomm's and Veoneer's shareholders, positions all of Veoneer's businesses for success and provides a compelling opportunity to customers and employees."

"This transaction creates superior value for our shareholders," said Jan Carlson, Chairman, President and CEO of Veoneer. "It also provides attractive opportunities to our Arriver team at Qualcomm and allows our other businesses to find long-term industrial partners where they can continue to develop."

Mr. Carlson continued, "Our board and management team remain focused on delivering on our objectives, driving continuous improvements across the organization and launching new technologies and programs for our customers. Despite significant industry-wide challenges, our team has done an outstanding job positioning Veoneer for success, building on our leading ecosystem of partners, cutting-edge technology and a strong order book."

"We are excited to partner with Qualcomm to acquire Veoneer," said Antonio Weiss and Josh Steiner of SSW Partners. "While Qualcomm focuses on the Arriver business, we will focus on finding strong, long-term strategic homes for the rest of Veoneer's businesses – we are committed to ensuring that Veoneer's employees prosper, the businesses continue to innovate and grow and customers continue to have uninterrupted access to the outstanding service and quality for which Veoneer is known. We have high regard for Veoneer's management team and look forward to partnering with them to ensure a successful outcome for all stakeholders."

**Transaction Details**

The cash purchase price of $37.00 per share represents an 18% premium to Veoneer's prior agreement with Magna, and an 86% premium to the unaffected share price prior to the announcement of the Magna agreement. The transaction has been approved by the boards of directors of Qualcomm and Veoneer and is subject to regulatory approvals including under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 in the United States, certain European foreign direct investment approvals, approval by Veoneer stockholders and other customary conditions. The transaction is expected to close in 2022.

The announcement follows the Veoneer board's determination, with the assistance of its financial and legal advisors, that a formal acquisition offer Veoneer received

from Qualcomm and SSW Partners on October 1, 2021 constitutes a "Superior Proposal" under the terms of Veoneer's merger agreement with Magna dated July 22, 2021. Magna has waived its right to submit a revised proposal to Veoneer.

Centerview Partners LLC and Evercore Group L.L.C. acted as financial advisors to Qualcomm and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as legal counsel. Davis Polk & Wardwell acted as legal counsel to SSW Partners. Morgan Stanley and Rothschild & Co acted as financial advisors to Veoneer, and Skadden, Arps, Slate, Meagher & Flom LLP acted as legal counsel.

22.     On November 15, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

### Financial Projections

23.     The Proxy fails to disclose material information regarding Veoneer's financial projections, specifically: the line items underlying the financial projections.

24.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

### Financial Analyses

25.     The Proxy fails to disclose material information regarding the financial analyses conducted by Morgan Stanley and Rothschild. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

26.     Regarding Morgan Stanley's Public Trading Comparables Analysis, the Proxy fails to disclose the individual multiples for the companies observed by Morgan Stanley.

27.     Regarding Morgan Stanley's Discounted Cash Flow Analysis, the Proxy fails to

disclose: (i) the terminal values used by Morgan Stanley; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates used by Morgan Stanley; (iii) the line underlying projected free cash flows; (iv) the total debt used by Morgan Stanley; and (v) the number of outstanding common shares on a fully diluted basis used by Morgan Stanley.

28. Regarding Morgan Stanley's Precedent Transactions Multiples Analysis, the Proxy fails to disclose the individual multiples for the transactions observed by Morgan Stanley.

29. Regarding Morgan Stanley's Equity Research Analysts' Future Price Targets analysis, the Proxy fails to disclose: (i) the price targets used by Morgan Stanley; and (ii) the sources of the price targets.

30. Regarding Rothschild's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values used by Rothschild; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates used by Rothschild; (iii) the line items underlying projected free cash flows; (iv) the net debt used by Rothschild; and (v) the number of fully-diluted shares outstanding used by Rothschild.

31. Regarding Rothschild's selected equity analyst per share target prices analysis, the Proxy fails to disclose: (i) the price targets used by Rothschild; and (ii) the sources of the price targets.

32. Regarding Rothschild's analysis of premiums paid, the Proxy fails to disclose: (i) the transactions used by Rothschild; and (ii) the premiums paid in the transactions used by Rothschild.

## COUNT I

**Claim Against the Individual Defendants and Veoneer for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

33. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth

herein.

34. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

35. Veoneer is liable as the issuer of these statements.

36. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

37. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

39. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

40. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

41. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

42. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

43. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth

herein.

44. The Individual Defendants acted as controlling persons of Veoneer within the meaning of Section 20(a) of the Exchange Act as alleged herein.

45. Due to their positions as officers and/or directors of Veoneer and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

48. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

49. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

51. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

52. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  November 23, 2021 **GRABAR LAW OFFICE**

By: _____/s/ Joshua H. Grabar_____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*

10